Peggy A. Tomsic (3879)
   tomsic@mgpclaw.com
Kennedy D. Nate (14266)
   nate@mgpclaw.com
**Magleby Cataxinos & Greenwood**
170 S. Main Street, Suite 1100
Salt Lake City, UT 84101
(801) 359-9000

Timothy P. Getzoff (*pro hac vice application forthcoming*)
   tgetzoff@hollandhart.com
Nadya C. Davis (*pro hac vice application forthcoming*)
   ncdavis@hollandhart.com
**HOLLAND & HART** LLP
One Boulder Plaza
1800 Broadway, Suite 300
Boulder, CO 80302
(303) 473-2700

**Attorneys for Plaintiffs**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| **NUTRACEUTICAL CORPORATION,**<br>    a Delaware corporation, and<br><br>**NUTRAMARKS, INC.,**<br>    a Delaware corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>**NATRATECH, LLC,**<br>    a Texas limited liability company, and<br><br>**NATRALIFE, LLC,**<br>    a Texas limited liability company,<br><br>    Defendants. | **COMPLAINT FOR**<br><br>**TRADEMARK INFRINGEMENT**<br><br><br><br>Civil Case No. 2:16-cv-1233<br><br>**JURY TRIAL DEMANDED**<br><br>**Magistrate Judge Dustin B. Pead** |

Plaintiffs Nutraceutical Corporation and NutraMarks, Inc. (collectively, "Nutraceutical"), in support of their Complaint against Defendants NatraTech, LLC and NatraLife, LLC (collectively "NatraLife" or "Defendants"), allege and state as follows:

## INTRODUCTION

1.      In this action, Plaintiffs seek injunctive and monetary relief for trademark infringement and unfair competition under the Federal Trademark Act, 15 U.S.C. § 1051 *et seq.,* violation of the Utah Unfair Competition and Practices Acts, Utah Code Ann. § 13-5-101 *et seq.*, and unjust enrichment under Utah common law.  Plaintiffs also seek cancellation of Defendants' United States Federal Trademark Registration No. 4,762,795 for the NATRALIFE mark pursuant to 15 U.S.C. §§ 1064 and 1119, based on Plaintiffs' senior, nationwide, registered rights in their NATURE'S LIFE trademark.

## THE PARTIES

2.      Plaintiff Nutraceutical Corporation is a Delaware Corporation having its principal place of business at 1400 Kearns Boulevard, Park City, Utah, 84060.

3.      Plaintiff NutraMarks, Inc. ("NutraMarks") is a Delaware Corporation having its principal place of business at 1500 Kearns Boulevard, Park City, Utah, 84060.  NutraMarks is a wholly-owned subsidiary of Nutraceutical Corporation and owns the trademark rights and assets used by Nutraceutical Corporation.

4.      Upon information and belief, Defendant NatraLife, LLC is a Texas limited liability company with its principal place of business at 4310 Wiley Post Road, Suite 102, Addison, Texas 75001.

5.      Upon information and belief, Defendant NatraTech, LLC is related to NatraLife, LLC and is a Texas limited liability company with an address at 2716 Peach Tree Drive,

Carrollton, Texas 75006.  Upon information and belief, the registered agent for both NatraLife, LLC and NatraTech, LLC is Joseph S. Perry with an address at 2716 Peach Tree Drive, Carrollton, Texas 75006.

6.      Upon information and belief, Defendants advertise, sell, and distribute their products nationwide, including in Utah, and their sales and distributions affect commerce in the United States.

7.      The Registrant and Registrar for Defendants' domain name natralife.com (discussed in more detail below) is Godaddy.com, LLC.  A true and accurate copy of the domain name registration for natralife.com is attached as **Exhibit A.**

8.      Although not a party to this Complaint, pursuant to 15 U.S.C. §§ 1114 and 1125(d), this Court may order Godaddy.com, LLC to suspend the domain name during the pendency of this dispute and, upon entering judgment in Nutraceutical's favor, may also order Godaddy.com, LLC to transfer the domain name to Nutraceutical.

## JURISDICTION AND VENUE

9.      This action arises under the Federal Trademark Act, 15 U.S.C. § 1051 *et seq.,* the Utah Unfair Competition and Practices Acts, Utah Code Ann. § 13-5-101 *et seq*., and Utah common law.

10.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants' contacts with Utah are sufficient to create personal jurisdiction over Defendants in Utah and because a substantial portion of the events giving rise to the claims in this action occurred within this District.

12.     The Court has personal jurisdiction over Defendants because, upon information and belief, they extensively transact business in and sell products into Utah,  have knowingly caused an injury to Plaintiffs within the state of Utah, including by infringing on Nutraceutical's trademark, and operate an interactive website that allows Utah residents to purchase Defendants' products.

13.     Upon information and belief, Defendants have also traveled to this jurisdiction by way of salespersons and/or distributors and engaged in other efforts to market and sell their products in the State of Utah.

14.     Upon information and belief, Defendants have also systematically advertised their products in Utah through, among others, their interactive website and the use of other internet based platforms, such as social media.

## GENERAL ALLEGATIONS

### Nutraceutical's Senior Rights To The NATURE'S LIFE Mark

15.     Nutraceutical (directly and through its subsidiaries) manufactures, distributes, and sells a wide variety of nutritional and dietary supplements, cosmetic products, personal care products, and therapeutic topical products (the "Nutraceutical Products") in health and natural food stores and similar outlets nationwide.

16.     Since at least as early as 1974, Nutraceutical and its predecessor-in-interest M.K. Health Food Distributors, Inc. d/b/a Nature's Life (which operates as a subsidiary of Nutraceutical) have used NATURE'S LIFE as a trademark throughout the United States in connection with the advertising, promotion, and sale of the Nutraceutical Products.

17.     Nutraceutical owns several U.S. Trademark Registrations for the NATURE'S LIFE mark, including U.S. Trademark Registration Nos. 1,383,920; 1,753,572; 3,604,528; and 4,707,781 (collectively, with Nutraceutical's common law rights in the NATURE'S LIFE mark,

the "NATURE'S LIFE Mark").  True and accurate copies of the registration certificates for the NATURE'S LIFE Mark are attached as **Exhibit B**.

18.     All of the above U.S. Trademark Registrations (except Registration No. 4,707,781) have achieved incontestability status under 15 U.S.C. § 1065 and 1115(b) and therefore constitute conclusive evidence of the validity of these marks and registrations and of Nutraceutical's exclusive right to use these marks in connection with the goods set forth in the registrations.

19.     Registration No. 4,707,781 is valid and subsisting and therefore constitutes prima facie evidence of the validity of the mark set forth in the registration and of Nutraceutical's exclusive right to use the mark in connection with the goods set forth in the registration.

20.     The registrations also constitute constructive notice to all other parties of Nutraceutical's ownership of the NATURE'S LIFE Mark, pursuant to 15 U.S.C. § 1072.

21.     Since at least as early as 1974, Nutraceutical has invested significantly to develop, promote, and maintain the NATURE'S LIFE Mark throughout the United States.

22.     Since as early as January 21, 1998, Nutraceutical has marketed and offered its Products via its website located at www.natureslife.com, which features the NATURE'S LIFE Mark prominently.



23.     As a result of substantial sales and extensive advertising and promotion, the NATURE'S LIFE Mark has become widely and favorably known as identifying the Nutraceutical Products, and has become an intellectual property asset of considerable value.

**Defendants Adopt And Apply To Register "NATRALIFE"**

24.     Upon information and belief, Defendants registered the natralife.com domain name on December 21, 2011 (the "Infringing Domain Name").  See **Exhibit A**.

25.     On October 31, 2013, NatraLife, LLC filed an application with the United States Patent and Trademark Office ("USPTO") to register the mark NATRALIFE in connection with "dietary supplements consisting of vitamins, minerals, herbs, fiber, or protein in tablet, powder, capsule or liquid form marketed to retail consumers for non-medical use; nutritional fortified protein drink mixes marketed to retail consumers for non-medical use" (Serial Number 86,107,203) (the "NATRALIFE Application").  A true and correct copy of the NATRALIFE Application is attached as **Exhibit C**.

26.     In the NATRALIFE Application, Defendants represented to the USPTO that their first use in commerce of the NATRALIFE mark was September 7, 2013.

27.     Upon information and belief, Defendants failed to inform the USPTO of Nutraceutical's senior rights in and registrations for its NATURE'S LIFE Mark for competitive dietary and nutritional supplement products, and instead falsely represented to the USPTO that there were no other users of marks so resembling NATRALIFE as to be likely to cause confusion.

28.     Moreover, in response to an initial refusal of the NATRALIFE Application, Defendants represented to the USPTO that the first portion of their mark would be pronounced like "NATUR."  A true and correct copy of Defendants' Response to Office Action, dated August 18, 2014, is attached as **Exhibit D** ("The pronunciation of NAT (referring to cited mark NAT'LIFE) and NATUR (referring to Defendants' NATRALIFE mark) does offer a meaningful way for consumers to distinguish between the marks.").

29.     In connection with the NATRALIFE Application, Nutraceutical contacted Defendants in an attempt to resolve this matter and avoid a likelihood of confusion as between Plaintiffs' senior, registered NATURE'S LIFE Mark and Defendants' junior, infringing NATRALIFE mark.

30.     Unfortunately, the parties have been unable to resolve this matter, and on June 30, 2015, the USPTO granted Defendants a registration for NATRALIFE (Registration Number 4,762,795) (the "NATRALIFE Registration").

31.     Defendants' NATRALIFE mark differs from Nutraceutical's prior used and registered NATURE'S LIFE Mark by only a few letters.  Phonetically, the marks are virtually

identically and the overall connotation and commercial impression created by the marks is confusingly similar.

32.     Defendants' infringing use of the NATRALIFE mark began subsequent to Nutraceutical's first use and registration of the NATURE'S LIFE Mark.

33.     Despite being on notice of Plaintiffs' rights in the NATURE'S LIFE Mark, Defendants continue to use the infringing NATRALIFE mark for goods that compete with the Nutraceutical Products.  Upon information and belief, Defendants are also marketing or will market their NATRALIFE products to the same customers and through the same channels of trade as Nutraceutical.

34.     Upon information and belief, Defendants' acts, in adopting and applying to register NATRALIFE despite having at least constructive knowledge of Nutraceutical's NATURE'S LIFE Mark, are and were knowingly, deliberately, and intentionally carried out in bad faith, or with a reckless disregard for, or with willful blindness to, Nutraceutical's rights, for the purpose of causing confusion and/or trading on the NATURE'S LIFE Mark and Nutraceutical's reputation and goodwill associated with the NATURE'S LIFE Mark.

35.     Upon information and belief, Defendants have profited and will continue to profit from their unlawful acts.

36.     The intentional nature of Defendants' unlawful acts renders this an exceptional case, thereby entitling Nutraceutical to exemplary and/or punitive damages under 15 U.S.C. § 1117(a) and applicable statutory and common law.

## COUNT I
### Federal Trademark Infringement
### (15 U.S.C. § 1114)

37.     Nutraceutical realleges the allegations contained in each of the paragraphs above.

38.     This is a claim for infringement of Nutraceutical's federally registered NATURE'S LIFE Mark, as depicted in **Exhibit B**.

39.     Defendants' conduct is likely to cause confusion, mistake, or deception as to the source or origin of its products, or the affiliation, sponsorship, or other relationship between the parties in violation of 15 U.S.C. § 1114(1).

40.     Defendants' conduct also constitutes an attempt to trade on the goodwill that Nutraceutical has developed in the NATURE'S LIFE Mark.

41.     By their conduct, Defendants have caused Nutraceutical irreparable harm, damage, and injury, including to the value and goodwill of Nutraceutical's NATURE'S LIFE Mark, as well as to Nutraceutical's business, goodwill, and reputation.

42.     Upon information and belief, Defendants will continue to commit the acts complained of in this Complaint unless restrained and enjoined by this Court.

43.     Nutraceutical has no adequate remedy at law.

## COUNT II
## Federal Unfair Competition
## (15 U.S.C. § 1125(a))

44.     Nutraceutical realleges the allegations contained in each of the paragraphs above.

45.     This is a claim for unfair competition, arising from Defendant's unlawful acts, including, without limitation, use of a false designation of origin which is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46.     Defendants' conduct also constitutes an attempt to trade on the goodwill that Nutraceutical has developed in the NATURE'S LIFE Mark.

47.     By their conduct, Defendants have caused Nutraceutical irreparable harm, damage, and injury, including to the value and goodwill of Nutraceutical's NATURE'S LIFE Mark, as well as to Nutraceutical's business, goodwill, and reputation.

48.     Upon information and belief, Defendants will continue to commit the acts complained of in this Complaint unless restrained and enjoined by this Court.

49.     Nutraceutical has no adequate remedy at law.

## COUNT III
### Federal Cybersquatting
### (15 U.S.C. § 1125(d))

50.     Nutraceutical realleges the allegations contained in each of the paragraphs above.

51.     This is a claim for cybersquatting, arising from Defendants' registration, trafficking, and/or use of the Infringing Domain Name.

52.     Defendants are not authorized to use the NATURE'S LIFE Mark, or any confusingly similar mark, with any Internet domain name, or as a portion of any Internet domain name.

53.     The Infringing Domain Name is phonetically virtually identical to Plaintiffs' NATURE'S LIFE Mark and, as a whole, is confusingly similar to Nutraceutical's NATURE'S LIFE Mark.

54.     Defendants have a bad faith intent to profit, and have profited, from the NATURE'S LIFE Mark by the registration, trafficking, and/or use of the Infringing Domain Name.

55.     Defendants' registration, trafficking, and/or use of the Infringing Domain Name constitutes cybersquatting, in violation of 15 U.S.C. § 1125(d).

56.     By their conduct, Defendants have caused Nutraceutical irreparable harm, damage, and injury, including to the value and goodwill of Nutraceutical's NATURE'S LIFE Mark, as well as to Nutraceutical's business, goodwill, and reputation.

57.     Upon information and belief, Defendants will continue to commit the acts complained of in this Complaint unless restrained and enjoined by this Court.

58.     Nutraceutical has no adequate remedy at law.

**COUNT IV**
**Cancellation of the NATRALIFE Registration**
**(15 U.S.C. § 1119)**

59.     Nutraceutical realleges the allegations contained in each of the paragraphs above.

60.     Nutraceutical possesses senior, nationwide, registered rights in the NATURE'S LIFE Mark for the Nutraceutical Products, which include dietary and nutritional supplements.

61.     A likelihood of confusion exists between Plaintiffs' prior used and registered NATURE'S LIFE Mark and Defendants' junior, infringing NATRALIFE mark.

62.     Pursuant to 15 U.S.C. §§ 1064 and 1119, the Court should direct the USPTO to cancel all trademark registrations owned by Defendants that use the term NATRALIFE for the Nutraceutical Products, or relating or competing products, including, but not limited to, the NATRALIFE Registration, No. 4,762,795.

**COUNT V**
**Violation of Utah Unfair Competition and Practices Acts**
**(Utah Code Ann. § 13-5-101, *et seq.*)**

63.     Nutraceutical realleges the allegations contained in each of the paragraphs above.

64.     This is a claim for violation of the Utah Unfair Competition and Practices Act arising from Defendants' unlawful acts, including, without limitation, infringement and diminution in value of Nutraceutical's NATURE'S LIFE Mark.

65.     Defendants' conduct is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' dietary and nutritional products, or the affiliation, sponsorship, or other relationship between the parties in violation of the Utah Unfair Competition Act.

66.     By their conduct, Defendants have caused Nutraceutical irreparable harm, damage, and injury, including to the value and goodwill of Nutraceutical's NATURE'S LIFE Mark, as well as to Nutraceutical's business, goodwill, and reputation.

67.     Upon information and belief, Defendants will continue to commit the acts complained of in this Complaint unless restrained and enjoined by this Court.

68.     Nutraceutical has no adequate remedy at law.

**COUNT VI**
**Unjust Enrichment**
**(Utah Common Law)**

69.     Nutraceutical realleges the allegations contained in each of the paragraphs above.

70.     Defendants have benefited from the improper, unfair, and unauthorized use of Nutraceutical's exclusive trademark rights in the NATURE'S LIFE Mark and its attendant goodwill.

71.     Defendants have knowledge of and fully appreciate the benefits they have received from Nutraceutical as a result of such actions.

72.     Defendants would be unjustly enriched if permitted to retain the proceeds and benefits obtained from their actions.

73.     Equity and good conscience dictate that Defendants be required to account for and turn over to Nutraceutical an amount equal to the value of the benefits conferred upon Defendants.

## PRAYER FOR RELIEF

Plaintiffs pray for the following relief and request that the Court:

A.      Grant permanent injunctive relief enjoining Defendants and each of their principals, directors, agents, servants, employees, successors, and assigns, and all those in privity, concert, or participation with them, from:

i.      imitating, copying, duplicating, manufacturing, producing, circulating, or otherwise making any use of the NATURE'S LIFE Mark, or any mark confusingly similar to the NATURE'S LIFE Mark;

ii.     using any unauthorized copy or colorable imitation of the NATURE'S LIFE Mark, or false designation of origin or description, in such fashion as is likely to relate or connect Defendants with Nutraceutical or cause confusion;

iii.    engaging in any other activity constituting unfair competition or infringement of the NATURE'S LIFE Mark or Nutraceutical's rights in, or to use, or to exploit the same;

iv.     assisting, aiding, or abetting another person or business entity in engaging or performing any of the activities enumerated in paragraphs (i) – (iii) above.

B.      Find that Defendants are liable for the causes of action alleged against them in this Complaint.

C.      Direct the USPTO to cancel the NATRALIFE Registration pursuant to 15 U.S.C. §§ 1064 and 1119.

D.      Order Defendants to transfer to Nutraceutical, or its designee at its election, the Infringing Domain Name, and all other domain names that Defendant owns that are identical to, contain, or are confusingly similar to the NATURE'S LIFE Mark, pursuant to 15 U.S.C. § 1125(d)(1)(C).

E.      Grant an order requiring Defendants and their principals, directors, agents, servants, employees, successors, and assigns, and all those in privity, concert, or participation with Defendants who receive actual notice of said order to deliver up, or at Nutraceutical's election, certify the destruction of, all promotional, advertising, product, packaging, and any other materials of any kind bearing the NATRALIFE Mark and any mark confusingly similar to the NATURE'S LIFE Mark.

F.      Award to Nutraceutical monetary damages in an amount to be fixed by the Court in its discretion as just including, but not limited to, all of the Defendants' profits or gains of any kind resulting from Defendants' willful infringement and/or acts of unfair competition, and any damages Nutraceutical suffered as a result of Defendants' actions, said damages to be trebled, and Nutraceutical's costs, exemplary damages, and reasonable attorney's fees in view of the intentional nature of the acts complained of in this Complaint and the exceptional nature of this case, pursuant to 15 U.S.C. § 1117(a)-(b), and applicable common law, state statute and federal law, including Utah Code Ann. §§ 13-5-14, 13-11-19, and 13-11a-4.

G.      At Nutraceutical's election at any time prior to judgment in this matter, award to Nutraceutical instead of actual damages for cybersquatting, statutory damages under 15 U.S.C. § 1117(d) in the amount of $100,000 per infringing domain name.

H.      Order Defendants to conduct corrective advertising sufficient to inform the consuming public that there is no connection between Nutraceutical and Defendants.

I.      Award Nutraceutical pre- and post-judgment interest on any monetary award made part of the judgment against Defendants.

J.      Grant to Nutraceutical such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

## JURY DEMAND

Nutraceutical demands a trial by jury on all issues so triable.

Dated: December 7, 2016.

Respectfully submitted,

 /s/ Kennedy D. Nate
Peggy A. Tomsic
Kennedy D. Nate
*Magleby Cataxinos & Greenwood*

Timothy P. Getzoff
Nadya C. Davis
*Holland & Hart LLP*

**ATTORNEYS FOR PLAINTIFFS
NUTRACEUTICAL CORPORATION AND
NUTRAMARKS, INC.**